Paul D. Supnik [SBN 52842]
Email:  paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: 310-859-0100
Facsimile: 310-388-5645

Attorney for Defendant
WILMOTT STORAGE SERVICES, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| RICHARD N. BELL,<br><br>                 Plaintiff,<br><br>   vs.<br><br>WILMOTT STORAGE SERVICES,<br>LLC; etc. et al.<br><br>               Defendants. | Case No. 2:18-cv-07328-CBM (MRWx)<br><br>Hon. Consuelo B. Marshall<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT BY DEFENDANT WILMOTT STORAGE SERVICES, LLC**<br><br>Hearing Date:  May 28, 2019<br>Hearing Time:  10:00 am<br><br>Location:  Courtroom 8<br>Complaint filed:  August 21, 2018<br>Pretrial Conf:  October 22, 2019<br>Trial Date:  November 12, 2019 |

## I.    INTRODUCTION

Defendant WILMOTT STORAGE SERVICES, LLC (WILMOTT) moves for summary judgment on grounds that infringement is not actionable as it is *de minimus,* and on its affirmative defenses of:

- Fair use; and
- Statute of limitations

The first question that might be asked is why?  Why was this lawsuit brought?  Why should this Court expend its limited resources on this matter?  Why should the parties have to incur attorney's fees in litigating this matter?  Possibly the answer might be that plaintiff hoped that it would ultimately find actionable copyright infringement.  That has not occurred.

Defendant WILMOTT STORAGE SERVICES, LLC (WILMOTT) acknowledges that the Indianapolis Photo BELL contends is infringing resided on the defendant's web server (though the image file has been taken down).  The image was not readily accessible and not readily locatable by the public.  The image has been essentially been a dormant file.  [GOESON   decl. at ¶ 12; TULLO decl. at ¶¶5, 9] BELL's claim at most relates to *de minimus* use of plaintiff's work. It was a trivial violation and not actionable.  Even if it was actionable, it fair use as a matter of law under the Fair Use provisions, 17 U.S.C .§ 107 of the Copyright Act.  See *Ringgold v. Black Entertainment Television, Inc*., 126 F.3d 70, 74-77 (2d Cir. 1997)(dictum).

The legal maxim of *de minimis non curat lex* applies to copyright actions no less than to other branches of the law. Accordingly, as explored in a separate section, for similarity to be substantial, and hence actionable, it must apply to more than simply a *de minimis* use.

In addition, and alternatively, WILMOTT contends that any use made of defendant's image was fair use as a matter of law when analyzed under 17 USC

2

107 of the Copyright Act.

Finally, WILMOTT also contends that the statute of limitations has passed as a matter of law for its copyright infringement claim.

Only recently did it become apparent that the Indianapolis Photo apparently was not on a webpage of WILMOTT's website but only dormant on its server for the website.  [See GOESON decl. ¶ ¶ 8-11; TULLO decl. at  ¶ ¶ 4-9] at  For purposes of this brief, the website is conceptually defined as what the ordinary consumer user of the website will use in a normal way to find information about various locations in the United States.  The website has web pages visible to the consumer and will typically include text and images.  The web server is intended to mean a computer which is used to store information and files including image files which are sent to web pages of the website which have links to files on the server.  [See GOESON decl. ¶2, 8]

The level of access of the image for the public is virtually non-existent. Consider the following analogy.  Assume one has a house with a glass front window.  The owner leaves a diary which is normally private, open to a page with information that she would prefer not to publicly share. Normally, no one is going to be able to see that information just because it is left on a table exposed to a window looking out to the street. But if someone else has a high-powered telescope or binoculars and is already aware that the diary is on the table, that person could peer through the window and observe what was on the open page of the diary. However, the homeowner has at least some expectation of privacy that this type of action will not occur and is unlikely to occur. It is not as if the diary is laying on the sidewalk in front of the house for someone to pick up and peruse.

The type of visibility of the image on the server but not on the webpage is somewhat similar. Granted this is not an exact analogy, but it serves to show that voluntary exposure of the image does not exist – there is no intention for the

3

Indianapolis Photo image to appear on a page of the website visible to the public. And there is no practical ability for the public to be able to see the image on a dormant file on the web server which is not linked to be served up to a web page.

## II.  FACTUAL BACKGROUND

   A. **Documentary Evidence Presented by Plaintiff in its summary judgment motion concurrently set for hearing.**

Bell's documentary evidence includes:

- Bell's Indianapolis Photo
- Image of a pinpoint URL of the file park.jpg from www.visitusa.com in April 2018 found by Mr. Bell using Google Images (images.google.com)[BELL decl. at ¶ 9]
- Email to Mr. Tullo telling WILMOTT that it is infringing the Indiana Photo.
- Image showing the digital file park_yyy.jpg appearing at a pinpoint URL of visitusa.com. [BELL decl. at ¶18]
- 2013 image capture from archive.org of a 2013 webpage of visitusa.org which does not show the Indianapolis Photo.  [BELL decl. at ¶ 25, EX. I]

**Declarations submitted by Plaintiff in its summary judgment motion concurrently set for hearing.**

The declarants in that motion are:

- Richard N. Bell, plaintiff
- Ryan Hamilton, attorney for the plaintiff

**Declarations submitted by WILMOTT in plaintiff's concurrently scheduled motion and in this cross-motion.**

- Jeffrey Goeson, non-retained expert and percipient witness
- Jonathan Tullo, representative for WILMOTT

- Paul D. Supnik, attorney for WILMOTT

The plaintiff's declarations are more revealing for what they do not disclose. They do not disclose any webpage of www.visitusa.com displaying or linking to the Indianapolis Photo. They do not disclose the details of the manner in which the image searches were used to obtain the pinpoint URL of the Indianapolis Photo on www.visitausa.com. Note that the URL of EX. I of BELL's declaration ends in ".htm." This is a true web page of the type normally visible by the public. BELL never shows or identifies a web page (thus typically ending in ".htm.) which ever contained the Indianapolis Photo. BELL has no documentary evidence showing that the image ever appears on a *webpage* of www.visitusa.com as distinguished from a dormant pinpoint URL on the server for its site.

Defendant WILMOTT's declarations, among other matters, describe a process used by Jeffrey Goeson to try to determine whether the image file park.jpg appeared on the website from 2011 to 2014. None was detected. He did find an image file with a date stamp of December 23, 2014 and removed it from the server for the www.visitusa.com website. [GOESON decl. at ¶¶5, 10, 11] Tullo discusses how he instructed Wilmott's computer person in India to remove the image file when he initially found out about it. Tullo also notes that Google never indexed the image file. [TULLO decl. at ¶¶4-6] Supnik describes the process for conducting a reverse image search with the search tools identified by Mr. Bell, noting that they require the actual image to do the search, rather than words, or the actual pinpoint URL of the location of the image.

As a practical matter, this Indianapolis Photo could only have seen by the public if one already had the URL for this specific image or a copy of the image. [GOESON decl. at ¶¶4, 8-11; TULLO decl. at ¶¶5, 6; SUPNIK Decl. at ¶¶1-3]

BELL contends that he discovered the image with Google Images search

5

yet he never explains how he got the information to plug into that search. [BELL Decl. ¶¶ 9, 20; SUPNIK Decl. at 1-3]  He would not have been able to do it if he typed Indianapolis.  He would not have been able to find it if he typed Alabama. He would not have been able to do it with any text, because, according to the TULLO declaration, that image was never indexed by Google.  [TULLO decl. at ¶ 6]  That means that the only way to find Bell's image on the internet would be to already have the exact or pinpoint address or have a copy of the physical or digital image file he wanted to find on the internet.

He does explain using an index of images on the WILMOTT site.  But he does not point out that the only likely way to have discovered the index identifying the location would have been to already have known the pinpoint URL of the image.

No evidence of reproduction by WILMOTT has been shown.[TULLO decl. at ¶10; GOESON at ¶5] No violation of the distribution right has been shown.  Plaintiff has introduced no evidence that images have been sent anywhere.  No violation of the publication right has been shown, since as a practical matter, the public cannot search the internet and find the image if they do not even have the image to begin the search.

An image file sitting on the server does not automatically result in its publication. An image appearing on a *webpage* is more likely to result in a publication of the image. [GOESON decl. at ¶¶8-9] To explain the difference, a server is essentially a computer or computer cloud which typically houses a hard drive containing numerous files. One type of file that might reside on a computer server is an image file, typically in the format identified as.jpg". Files are on computers are typically named by something that can identify the particular file followed by an extension which identifies the type of file. The "jpg" extension is a common type of image file.

The website is what people see when they view the Internet. Underlying the website is a description written in a computer language, typically, HTML, which tells the webpage but what to display. If the webpage does not instruct the server to place an image on the webpage, it simply stays dormant on the server. [GOESON decl. at ¶¶ 3, 4, 9]

All the evidence which plaintiff has presented simply shows that a file Park_yyy.jpg existed on the website server and/or a file park.jpg existed on the server. [GOESON decl. at ¶10] It does not show that the image file was actually was available for public viewing on a webpage of www.visitusa.com. [GOESON decl. at ¶11]. The reason for that is that when the public is searching for an image say of either Mobile, Alabama or Indianapolis, they can go on Google and use text to search for images of Indianapolis or Mobile, Alabama. However, unless an individual has special knowledge that there is a specific file called park_yyy.jpg at a particular location, or already has a copy of the image to drop into the search bar, as a practical matter, they will never discover on Google, Google Images, Tineye or other image search engine the fact that there is the complained of Indianapolis Photo on the www.visitusa.com server. They will not be able to see it on a webpage because at least as far as known, there is and was no such webpage.  The pinpoint URL was never indexed by the Google seach index.  [TULLO decl. ¶¶3, 4, 6, 7]

Using reverse image search programs such as Tineye and Google Images search, apparently, it is possible to upload an image to those programs and search the Internet for the image which can be located on websites or accessible web servers. [BELL decl. at ¶¶20-21; plaintiff's motion at 3 and fn. 1; SUPNIK Decl. at ¶¶1-4]  BELL does not explain what he placed in a search bar of Google Images search or Tineye in order to find the pinpoint URL.  In using the reverse search engine, apparently Mr. Bell found the pinpoint URL and appropriate file

name from a reverse image search such as Tineye.com or Google Images.  Based on the file name, it is surmised that he was then able to then do a search for that particular file name and locate it on the server.

It is logical why Bell's description shows only a single image but no text or other content.  [BELL decl at EXHIBIT E]  The only reasonable inference here is that there was never a known webpage that had this image and that the image identified was simply from the server and not a webpage itself.  That is suggested by the search conducted by Jeffrey Goeson.  [GOESON decl. at ¶5]

Mr. Bell also references Google Images search and points to Wikipedia.org/wiki/Google Images for information about those services.  It states that Search by Image feature allows for reverse image searches directly in the image search bar.  "This feature allows users to search for an image by dragging and dropping one onto the search bar, uploading one, or copy-pasting a URL that points to an image into the search bar."  The feature is said to have existed since 2011, thus in the time frame of Mr. Bell having registered the copyright including his Indianapolis Photo.  [BELL decl. EXHIBIT D]  The search allows one to use an image, rather than words, as the search query.  The only way this is meaningful is if Mr. Bell took his image and dropped it, either into the Google Images search or TinEye search engine.  [SUPNIK decl. at ¶¶1-5]

## III.   ARGUMENT

### A.   THE SUMMARY JUDGMENT STANDARD PREVENTS BELL FROM RAISING A TRIABLE ISSUE OF ACTIONABLE COPYRIGHT INFRINGEMENT, OR NEGATING AFFIRMATIVE DEFENSES HERE.

Federal Rule of Civil Procedure 56(a) provides in part:

8

(a) Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

Judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court cannot deny a motion for summary judgment unless the evidence demonstrated that there is a dispute about a material fact. Fed. R. Civ. P. 56(e).

The mere existence of a "scintilla of evidence" to support the nonmoving party's side will not be sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rather, there must be sufficient evidence upon which a jury could properly base a verdict, taking into account the parties' respective burdens of proof. Id.

BELL cannot show that WILMOTT's acts has exceeded the threshold of actionable infringement nor negate the defenses of fair use or statute of limitations.

## B.   PLAINTIFF BELL CANNOT PROVE ACTIONABLE COPYRIGHT INFRINGEMENT SINCE WILMOTT'S CLAIMED ACTS ARE DE MINIMUS.

The qualitative aspects of WILMOTT's acts do not rise to the level of copyright infringement as they are *de minimus.*  The *de minimus* doctrine is rarely discussed in copyright opinions because suits are rarely brought over

trivial instances of copyright.  See *On Davis v. The Gap, Inc.*, 246 F.3d 152, 173 (2d Cir. 2001)(though *de minimus* copying was held not to apply in that particular set of facts).  Judge Leval there discusses *de minimus* copying:

> "Parents in Central Park photograph their children perched on Jose de Creeft's Alice in Wonderland sculpture. We record television programs aired while we are out, so as to watch them at a more convenient hour. Waiters at a restaurant sing "Happy Birthday" at a patron's table. When we do such things, it is not that we are breaking the law but unlikely to be sued given the high cost of litigation. Because of the de minimis doctrine, in we are in fact not breaking the law. If a copyright owner were to sue the makers of trivial copies, judgment would be for the defendants. The case would be dismissed because trivial copying is not an infringement."

See *Davis v. The Gap, Inc.,* 246 F.3d at 173 (2d Cir. 2001) cited in Nimmer on Copyright, § 8.01[G] at 8-28; *Ringgold v. Black Entertainment Television, Inc.,* 126 F. 3d 70, 74-76 (2d Cir. 1997)(pointing out that Judge Leval has observed that fact patterns are rarely litigated illustrating this use of the phrase).

Defendant's WILMOTT's activity here is *de minimus*.  It existed dormant on a computer server.  WILMOTT was not even aware of its existence until it was brought to its attention by plaintiff.  It could not be found by the public absent extraordinary abilities to determine the hierarchical structure of the web site file structure, or more likely, have the actual pinpoint URL or already have the image searched in order to find the same image on the web server.  When compared to the examples similar to those suggested by Judge Leval, it seems even less culpable than singing "Happy Birthday" at a restaurant patron's table (even if that song were still subject to copyright protection), photographing children in a park next to a famous statue subject to copyright protection, or recording a television program on TIVO for time shifting purposes.

There is no evidence of the Indianapolis Photo appearing on a web page of the website but only on a server for the website, and thus none of the otherwise implicated exclusive rights of copyright, that of reproduction, distribution or publication are actionable.  [GOESON decl. at ¶¶9, 12; TULLO decl. at ¶¶6, 9; SUPNIK decl. at ¶4]

Recognition of the doctrine of *de minimus non curat lex* in copyright cases for low level uses of images does appear in some case law.  In the right circumstance, It is not simply just the amount of the image used but the manner in which the image is used.  Here, we have no further evidence other than the image only appeared on the server.  [GOESON decl. at ¶¶3-11, TULLO decl. at ¶¶4-6, 9; SUPNIK decl. at ¶¶1-6] The limited nature of the copying fits that limited *de minimus* doctrine.  See *Knickerbocker Toy Co. v. Azrak-Hamway Intern.*, 668 F. 2d 699, 702, 703 (2d Cir. 1982).  There, a blister card containing an otherwise infringing image produced by the defendant was obtained during discovery.  Evidenced showed that the card was used as a sample to position artwork and that a totally different illustration would be used for the production run of the card.  Judge Stewart found that the blister card was only an office copy that was never used.  This copyright infringement claim was dismissed on the ground that the infringement was *de minimus*.  That is analogous to the situation here.  The pinpoint URL of the Indianapolis Photo was never used on a webpage. [TULLO decl. at ¶¶ 6, 8, 9]   See *Ringgold v. Black Entertainment Television, Inc.,* 126 F. 3d 70 (2d Cir. 1997)(*de minimis* concept useful in insulating trivial types of copying from liability (the photocopied cartoon on the refrigerator) and in marking the quantitative threshold for actionable copying); *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 216-17 (2d Cir. 1998)(timing a factor); *Gottlieb Dev. LLC v. Paramount Pictures Corp.,* 590 F. Supp. 2d 625, 632-33 (S.D.N.Y. 2008)(timing also a factor).  Although these last two cases focused on

time of otherwise infringing material in motion pictures, it is really the character of the use overall that must have been considered in that decision.  The character of the use here is the image file residing dormant on a server without any evidence of exploitation.

The acts which Mr. Bell contends infringe is so attenuated so as to be *de minimus*.  The public could not do a search for "Mobile Alabama Park" to have found the Indianapolis Photo on Google or Google Images Search. Only if the searcher knows the specific file name and pinpoint URL or already has a physical or digital copy of the Indianapolis Photo, can the image be found. The Ninth Circuit has upheld summary judgment for *de minimus* use of a copyrighted work in different contexts.  *Newton v. Diamond,* 349 F.3d 591, 388 F. 3d 1189 (9th Cir. 2004)(use of a sample of Beatie Boys musical composition of the sound recording of "Choir" was a *de minimus* use of the "Choir" composition and therefore was not actionable).  Other courts have followed this.  *Calkins v. Playboy Enterprises Intern., Inc.*, 561 F. Supp. 2d 1136 (E.D. Cal. 2008), 388 F.3d 1189 (2004)(photograph from yearbook used in Playboy Magazine dismissed on the grounds of fair use).

Courts dismiss copyright cases under the doctrine of *de minimis non curat lex* where any copying of protected matter is trivial.  See the discussion in *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997). *On Davis v. The Gap, Inc.*, 246 F. 3d 152, 172-73 (2d Cir. 2001); *American Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 916 (2d Cir.1994) (suggesting that if photo-copying for individual use in research is *de minimus*, it would not constitute an infringement).

### C.  WILMOTT HAS ESTABLISHED ITS FAIR USE DEFENSE AS A MATTER OF LAW.

Pursuant to 17 U.S.C. § 107, "the fair use of a copyrighted work … is not

an infringement of copyright."  See *Bouchat v. Balt. Ravens Ltd. P'ship*, 737 F.3d 932, 937 (4th Cir. 2013)(fair use finding complete defense to infringement claim). The statute provides four factors that the Court must consider:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

The Supreme Court has placed paramount importance on the fourth factor, calling it "undoubtedly the single most important element of fair use." *Campbell v. Acuff-Rose, Music, Inc.* 510 U.S. 569, 578, 114 S. Ct. 1164, 127 L.Ed. 2d 500 (1994); *Harper & Row Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 566 (1985).  ("[T]he Supreme Court has made clear that first and fourth factors are the most important.").

**1.      Purpose and character -- WILMOTT'S minimal use of the Indianapolis Photo was sufficiently transformative and non-commercial, favoring fair use.**

In assessing the first fair use factor—"the purpose and character of the use"—courts look to two related factors: (1) whether the new work is transformative and (2) the extent to which the use serves a commercial purpose. Both factors weigh in favor of WILMOTT here. See *Campbell v. Acuff-Rose, Music, Inc.*  510, U.S. at 578.

The purpose and character of the use presumably was only potentially to have the Indianapolis Photo available on the server if and when it were to be placed on a webpage of the website.  Neither party has shown it ever appeared on

a webpage.  Conceivably, this means if and when the image were licensed.  Even if it was on the website and viewable, such use would have been primarily to display and inform the would be viewer of the location it depicted.

Although the website overall may have had a commercial application, any intended use of the Indianapolis Photo was at most informational and not exploitative, even if the Indianapolis Photo had appeared on a webpage.  Most uses in some manner have an aspect of commerciality, even including the types of uses appearing in the preamble of Section 107 of the Copyright Act.  In considering the commercial aspect, *Seltzer v. Green Day, Inc.,* 725 F.3d 1170, 1178 (9th Cir. 2013) points out that it is the degree to which the new user exploits the copyright for commercial gain – as opposed to incidental use as part of a commercial enterprise, citing *Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F. 3d 622 627 (9th Cir. 2003).  As the evidence stands, there is no possible commercial gain.  Even if the image were pulled into a web page, which it was not, that use most likely would have been informational and not for the purpose of entertainment or profit.  The Indianapolis Photo depicts a particular scene in Indianapolis, and what appears on that image is significantly as a result of the landscape, the architecture of the city, the water running through the park, the trees and further defines the location in the city as shown by the specific photograph.  Essentially, these important features of the photograph for use on a travel website are not materially altered by specific authorship of the photographer.

WILMOTT's use or at least potential use if it had appeared on a web page would have been transformative.  "A 'transformative' use is one that employs the matter in a different manner or for a different purpose from the original, thus transforming it."  Put another way, "[a] work is transformative if, instead of 'merely supersed[ing] the objects of the original creation,' the new work 'adds

14

something new, with a further purpose or differen[t] character, altering the first with new expression, meaning or message.  See *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994)).  "The use of a copyrighted work need not alter or augment the work to be transformative in nature. Rather, it can be transformative in function or purpose without altering or actually adding to the original work."  See *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009), *Brammer v. Violent Hues Productions, LLC,* (ED Va 2018).

Where a copyrighted work "is being used not for its expressive content, but rather for its factual content," that use is transformative by definition, weighing in favor of fair use. *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1165 (9th Cir. 2007) (finding transformative use where search engine "thumbnail" pictures served an informational purpose different than plaintiff's aesthetic and entertainment purposes); *Núñez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 23 (1st Cir. 2000) (affirming summary judgment for defendant on fair use grounds and holding that defendant's use was transformative where it sought not only to entertain and make profit, but also to provide information to the public).

In determining that the work was not for commercial purposes, the issue is whether WILMOTT gained direct or immediate commercial advantage from the alleged infringing use. Here, the image sat dormant on a server not linked to a webpage.  [TULLO decl. at ¶¶6. 8, 9; GOESON decl. at ¶¶3, 4, 8, 9]   The Supreme Court has expressly rejected the argument that no for-profit enterprise can make fair use of a copyrighted work—holding that "[i]f, indeed, commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities are generally conducted

for profit in this country." *Campbell*, 510 U.S. at 584 (citation omitted).

WILMOTT made no profits from its use of the Photo, at least since the public could not even find the use. [TULLO decl. at ¶¶9, 10] The pinpoint URL was not even indexed by Google. [TULLO decl. at ¶6]. It is undisputed that WILMOTT never sold copies of the Photo. [TULLO decl. at ¶9] It is follows that WILMOTT never made any revenue from the Indianapolis Image on the Website server. This factor weighs in favor of fair use.

## 2. Nature of copyrighted work -- the factual nature and WILMOTT'S use favor fair use.

The second fair use factor looks at "the nature of the copyrighted work." 17 U.S.C. § 107(2). As noted by the Fourth Circuit, "the Supreme Court has instructed that 'fair use is more likely to be found in factual works than in fictional works,' whereas 'a use is less likely to be deemed fair when the copyrighted work is a creative product.'" See *Stewart v. Abend,* 495 U.S. 207, 237 (1990)("However, if the disputed use of the copyrighted work 'is not related to its mode of expression but rather to its historical facts,' then the creative nature of the work is mitigated.")

The nature of the copyrighted work is more of a factual work in the context of the overall website. Its primary purpose is used to identify a particular location, and that would be true especially in connection with a travel website. Incidental use was held to be fair use in the background of a band concert in *Selzer v. Green Day, Inc.,* 735 F.2d 1170 (9th Cir. 2010). Published works are more likely to be considered fair use since the first publication has already been made. *Kelly v. Arriba Soft Corp.,* 336 F.2d at 820.

Here, the Photo undoubtedly contains certain creative elements such as Plaintiff's decisions about lighting and location. But as described above, WILMOTT'S use on the website server and probably only potential use on a

webpage, for which no evidence has been presented, was not related to those creative considerations, but rather to the factual content of the Indianapolis Photo—the Indianapolis region it depicts.  This prior publication, in conjunction with the fact that WILMOTT'S use of the Indianapolis Photo related primarily to its factual content, tips the second fair use factor in favor of WILMOTT.

3.    **Amount and substantiality used -- WILMOTT's only use of the Indianapolis Photo on a virtually undiscoverable dormant web server location favors fair use.**

The third fair use factor assesses "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Courts also take into account the transformative nature of the alleged infringing use when addressing this factor, and have held that "[t]he extent of permissible copying varies with the purpose and character of the use." "The first and third factors … take into account to some degree the purpose of the disputed use."). Thus where a transformative use requires certain portions of the copyrighted work, and the alleged infringer uses no more than is necessary to facilitate that new use, this factor supports a fair use finding. There is no evidence of use on a web page – its only existence is on a dormant file on the website's file server.

The amount and substantiality of the work used in relationship to the work as a whole was highly limited.  Even though the entire picture may have been on the server, its use was miniscule in that it was only on the server and not on a webpage. Even copying an entire work does not mean that there can be no fair use.  It depends on the nature of the use.  *Arriba*, 336 F.2d at 820-21; *Authors Guild Inc. v. Google,* 804 F.3d 202, 221-23 (2d Cir. 2015)(wholesale copying to servers in mass of entire libraries of books fair use, where only snippets of the works would appear visible to public on website).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    **4.**    **Effect on potential market -- WILMOTT's use had no effect on the alleged market for the Indianapolis Photo, again favoring fair use.**

As noted above, the Supreme Court has stated that the fourth fair use factor – "the effect of the use upon the potential market for or value of the copyrighted work"—is "undoubtedly the single most important element of fair use." Harper & Row, 471 U.S. at 566. The Ninth Circuit has points out the significance of the manner of use.  See *SOFA Entertainment, Inc. v. Dodger Productions,*709 F. 3d 1273, 1280 (9th Cir. 2013)(a 7 second clip from the Ed Sullivan show appearing once in the play Jersey Boys does not pose any reasonable threat to SOFA's business model; summary judgment granted).  See *Kelly v. Arriba Soft Corp*., 336 F.2d 811, 821-22 (9th Cir. 2003)(thumbnail low resolution images appeared in a computer search and this was sufficient to find fair use existed).  Sitting on a server, not located on a web page does not materially impair the marketability of BELL's Indianapolis Photo and should deemed fair.  This is a lower profile use than in *Kelly*, as the *Kelly* thumbnails were readily accessible to the public; WILMOTT's use was not.

The existence on a server that virtually no one had access to without significant snooping does not affect Mr. Bell's market for the value of the copyrighted work.  No one is going to find this to be a substitute.  The public is unlikely to access the image to reproduce it because there is no evidence to even show that it appeared on a webpage or was even searchable without prior knowledge of the existence of the specific image file or pinpoint URL. Who besides Mr. Bell and possibly his acquaintances have that knowledge?

Somewhat analogous but far more egregious facts resulted in summary judgment against a plaintiff whose photo, a time lapse depicture of the Adams Morgan district of Washington D.C. at night used on a website to promote a film

18

festival.  *Brammer v. Violent Hues Productions, LLC* (E.D. Va. 2018),  Civil Action No. 1-17-cv-01009, citing *Bouchat v. Balt. Ravens Ltd. P'ship,* 737 F.3d 932, 937 (4ᵗʰ Cir. 2013)(holding that a finding of a fair use defense is a complete defense to an infringement claim.)

### 5. WILMOTT's actions towards the Indianapolis Photo have been in good faith.

Because the fair use defense is a codified "equitable rule of reason, … the propriety of the defendant's conduct is relevant to the 'character' of the use." WILMOTT'S use of the Photo was in good faith. Mr. Tullo stated that he was unaware of the Indianapolis Photo and immediately requested that it be taken down within a matter of days of being informed of its pinpoint URL with the file name park.jpg.  [TULLO decl. at ¶4]  And shortly after later being informed of the existence of either the same or different file park_yyy.jpg, requested that it be removed.  [TULLO decl. at ¶¶5, 6, 9, 10; GOESON decl. at ¶¶5, 10, 12].   What may have happened, is that the web person who was instructed to remove the pinpoint URL simply renamed the file from park.jpg to park_yyy.jpg.  [See SUPNIK Decl. at ¶5]  All the evidence shows that WILMOTT believed it was doing nothing wrong, and that it acted promptly to cure any potential problems as soon as possible. This good faith weighs in favor of fair use.

Each of the four statutory fair use factors favors WILMOTT.  Thus, WILMOTT's use of the Photo was fair use and not infringement.  The Court should grant summary judgment in favor of WILMOTT on the affirmative defense of fair use.

### D. WILMOTT'S AFFIRMATIVE DEFENSE OF STATUTE OF LIMITATIONS DEFEATS BELL'S COPYRIGHT INFRINGEMENT CLAIM AS A MATTER OF LAW.

### 1. The Supreme Court requires application of the Injury Rule

**and not the Discovery Rule as to Copyright Infringement**

**baring BELL's claim.**

The initial claim, if any, to BELL as a result of the alleged copyright infringement occurred and the accrued no later than December 24, 2014, long before the filing of this lawsuit.  [TULLO at ¶ 7]  The discovery rule for determining when a statute of limitations runs is based on the discovery of the injury whereas the accrual rule begins on the actual date of the injury.  The Supreme Court has not explicitly decided whether the injury or discovery rule should apply in copyright cases. *Auscape International v. National Geographic Society*, 409 F.Supp. 2d 235, 242 (S.D.N.Y. 2004).

However, it has analyzed the proper approach to using the injury or discovery rule in connection with federal claims in which there is a legislated statute of limitation.  In *TRW v. Andrews*, 534 U.S. 19, 27-30; 122 S.Ct. 441, 151 L.Ed. 2d 339 (2001), the Supreme Court reversed application of a discovery rule in determining whether a claim accrued under the Fair Credit Reporting Act. It rejected the previously dormant view that federal courts should apply an injury rule only when Congress explicitly has adopted that rule, requiring instead that federal courts look beyond the specific language in determining what rule should apply when a statute is silent. *Auscape,* 409 F.Supp.2d  at 244.

*TRW v. Andrews* holds that unless Congress explicitly or through legislative history says otherwise, a specific statute of limitations period in a statute enacted by Congress does not permit discovery rule exceptions.  *TRW v. Andrews was* a 7-2 decision of the court in which both Justice Scalia and Thomas filed concurring opinions. 534 U.S. 19, 35-39 (2001). The case originated from the Ninth Circuit and dealt with the running of the 2 year statute of limitations governing the Fair Credit Reporting Act (FCRA).  The Supreme Court would not make the exception the general rule as well. The Ninth Circuit applied what it

considered to be the general federal rule, that is a federal statute of limitations begins to run when a party knows or has reason to know of the injury. 534 US at 26. The Supreme Court disagreed with the Ninth Circuit approach that all federal statutes of limitations incorporate a general discovery rule unless Congress expressly legislated otherwise. 534 US at 27. See 225 F.3d at 1067. The concurring opinion approves of the outcome but points out that the decision casts the meaning of innumerable other limitation periods in doubt. 534 US at 38 Thus, as a matter of law, applying the injury rule, BELL's claim is time barred.

*Auscape* did a thorough analysis of the statute of limitations issues for copyright infringement in view of the Supreme Court in *TRW v. Andrews*. *TRW* requires examination of the statutory structure and legislative history in determining whether the discovery or injury rule should apply where the statute is silent on the issue. *Auscape*, 409 F. Supp.2d at 244.

In looking at the text of the statute, Section 505 only says that a civil copyright claim must be brought "within three years after the claim accrued.". With the statute lacking guidance, it concluded that the Court must turn to the legislative history. Based on the Senate Report in enacting the statute of limitations statute of limitations of the Copyright Act, *Auscape* pointed out:

- The goal of a uniform 3-year limitations was to remove uncertainty, rather than depend upon something as indefinite as when the copyright owner learned of the infringement.

- A second inference is that a 3-year period was sufficient to provide an adequate opportunity for the owner to commence his or her case because copyright owners generally receive "reasonably prompt notice" of infringement.

- Congress was aware that notice to the plaintiff would not occur in every case.

- Congress was well aware that the statute of limitations it was enacting would not necessarily allow a remedy for every wrong. It at least implicitly acknowledged "that the passage of time must leave some wrongs without a remedy."

- The Supreme Court in TRW further indicated that a discovery rule should be used only in those cases where the "cry is loudest.". The examples given were latent diseases and medical malpractice, thus, where injuries are likely to be substantial and the opportunity to discover at time of injury are likely to be limited, thus, where the application of an injury rule is likely to be harsh. That is not the situation here. *Auscape* at 247.

"In short, the legislative history of Section 507(b) makes it clear the Congress intended to adopt a three-year limitations period running from the date of infringement, as a discovery rule would have defeated its overriding goal of certainty." *Auscape,* 409 F.Supp.2d at 247.

Thus, applying the reasoning of the Supreme Court prohibits implying that a "discovery" rule rather than date of injury may be used determine the accrual date of a cause of action where it had not been expressed by Congress. *TRW v. Andrews*, 534 U.S. 19, 122 S. Ct. 441, 446, 151 L.Ed. 2d 339 (2001). According to Professor Nimmer, the Ninth Circuit erred in holding that a generally applied discovery rule controlled the case in view of *TRW v. Andrews*. 3 *Nimmer on Copyright,* 12.05[B][1][b] contending that the *Auscape* interpretation of the Supreme Court mandates the application of the "injury" rule in connection with the copyright statute of limitations .The analysis by the court showed that Congress had intended that there be a bright line for determining when the statute of limitations ran, even though that meant that it might leave some wrongs without a remedy.

The cases which have applied the discovery rule in California are factually distinguishable from the present case in that substantial damages were at stake and came closer to warranting a remedy.  In *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706-707 (9th Cir. 2004) cites its decision in *Roley v. New World Pictures, Ltd.*, 19 F.3d 479 (9th Cir.1994) which predates the *TRW* Supreme Court case.  Both take a very different view that that required by the Supreme Court *TRW* case, especially in view of the careful analysis in *Auscape*.  Neither of these copyright cases make any reference to *TRW* or *Auscape*.

**2.    Even if the discovery rule were to apply, BELL's filing delay is unreasonable as a matter of law.**

Even if *Polar Bear Prods. v. Timex Corp*., 384 F.3d 700, 706 (9th Cir. 2004) were to be applied, BELL's delay is inexcusable as a matter of law.  The search tools of Tineye and Google Images reverse search engines existed in 2011 at about the time Mr. Bell registered his copyright claim. [BELL decl. at ¶ 8] Mr. Bell has been actively pursuing who he claims are infringers at the time of registration.  He had the sophistication of a lawyer and of copyright to do so. [SUPNIK decl. at ¶ 7]  In fact, Mr. Bell had filed a lawsuit on the Indianapolis photo at least as early as 2013 and filed more than 50 copyright lawsuits prior to December 2017. [Request for Judicial Notice].

**E.    THERE IS NO NECESSITY FOR AN INJUNCTION.**

The Indianapolis Photo has been removed from the server.  [GOESON decl. at ¶10; TULLO decl. at ¶¶4, 5, 9] There is no benefit or incentive for WILMOTT to be placed back on WILMOTT'S website server or any webpage of www.visitusa.com.  [TULLO decl. at ¶10].  No evidence has arisen which suggests that it was even on a web page, and thus, not generally available to the public, unless they had a key to access it, such as through the reverse image searches described above.  Thus, it is unlikely that the image would return to the

website and no injunction should issue.  There is no compelling reason to issue an injunction. See general policy described in *Ebay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 391-94 (2006).

### F.      WILMOTT IS ENTITLED TO AN AWARD OF COSTS INCLUDING ATTORNEY'S FEES UNDER 17 U.S.C. 505.

Wilmott requests that this court dismiss Bell's complaint and award costs including a reasonable attorney's fee to defendant WILMOTT under 17 USC § 505.  *Perfect 10, Inc. v. Giganews, Inc.*, 847 F. 3d 657, 675-76 (9th Cir. 2017).

### IV.   CONCLUSION

WILMOTT has shown that plaintiff has no valid copyright claim as any claimed actions by WILMOTT are trivial, and thus the infringement is *de minimus,* as a matter of law.  Even if actionable, infringement is defeated as a matter of law by the defense of fair use.  In addition, BELL's claim, even if it were otherwise valid, is time barred by the statute of limitations as a matter of law.  No injunction should issue, and therefore WILMOTT's Cross-Motion for Summary Judgment should be granted, plaintiff's complaint dismissed and WILMOTT awarded its attorney's fees under 17 U.S.C. § 505.

**/s/**

Dated:  April 26, 2019          _____

PAUL D. SUPNIK
Attorney for Defendant
WILMOTT STORAGE SERVICES, LLC

24

**CERTIFICATE OF SERVICE**

I, PAUL D. SUPNIK certify that I am an attorney at law, licensed to practice in the State of California and am admitted to practice in the United States District Court for the Central District of California and that on April 26, 2019, I electronically filed/lodged the within:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT BY DEFENDANT WILMOTT STORAGE SERVICES, LLC**

with the Clerk of the Court by using the CM/ECF system.  I certify that all counsel of record in the case are registered CM/ECF users and serviced will be accomplished by the CM/ECF system.

April 26, 2019

/s/
_____
PAUL D. SUPNIK

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 2

II.  FACTUAL BACKGROUND ........................................................................ 4

III.    ARGUMENT ............................................................................................. 8

    **A.      THE SUMMARY JUDGMENT STANDARD PREVENTS BELL FROM RAISING A TRIABLE ISSUE OF ACTIONABLE COPYRIGHT INFRINGEMENT, OR NEGATING AFFIRMATIVE DEFENSES HERE.** ...................... 8

        **B.      PLAINTIFF BELL CANNOT PROVE ACTIONABLE COPYRIGHT INFRINGEMENT SINCE WILMOTT'S CLAIMED ACTS ARE DE MINIMUS.** .............................. 9

    **C.      WILMOTT HAS ESTABLISHED ITS FAIR USE DEFENSE AS A MATTER OF LAW.** ................................................. 12

        **2.      Nature of copyrighted work -- the factual nature and WILMOTT'S use favor fair use.** ......................................... 16

        **3.      Amount and substantiality used -- WILMOTT's only use of the Indianapolis Photo on a virtually undiscoverable dormant web server location favors fair use.** ..................... 17

        **4.      Effect on potential market -- WILMOTT's use had no effect on the alleged market for the Indianapolis Photo, again favoring fair use.** .......................................................... 18

        **5.      WILMOTT's actions towards the Indianapolis Photo have been in good faith.** ............................................................... 19

    **D.      WILMOTT'S AFFIRMATIVE DEFENSE OF STATUTE OF LIMITATIONS DEFEATS BELL'S COPYRIGHT INFRINGEMENT CLAIM AS A MATTER OF LAW.** ............. 19

        **1.      The Supreme Court requires application of the Injury Rule and not the Discovery Rule as to Copyright Infringement baring BELL's claim.** ................................... 20

        **2.      Even if the discovery rule were to apply, BELL's filing delay is unreasonable as a matter of law.** ........................... 23

    **E.      THERE IS NO NECESSITY FOR AN INJUNCTION.** ............. 23

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**F.**     **WILMOTT IS ENTITLED TO AN AWARD OF COSTS INCLUDING ATTORNEY'S FEES UNDER 17 U.S.C. 505.** .... 24

**IV.**   **CONCLUSION** ........................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Geophysical Union v. Texaco, Inc.*,
    60 F.3d 913 (2d Cir.1994) .............................................................. 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................... 9

*Auscape International v. National Geographic Society*,
    409 F.Supp. 2d 235 (S.D.N.Y. 2004) ............................ 20, 21, 22, 23

*Authors Guild Inc. v. Google*,
    804 F.3d 202 (2d Cir. 2015) ........................................................ 17

*Bouchat v. Balt. Ravens Ltd. P'ship*,
    737 F.3d 932 (4th Cir. 2013) ........................................................ 13

*Brammer v. Violent Hues Productions, LLC*
    (E.D. Va. 2018), <u>Civil Action No. 1-17-cv-01009</u>.................... 15, 19

*Campbell v. Acuff-Rose, Music, Inc.*
    510 U.S. 569, 114 S. Ct. 1164, 127 L.Ed. 2d 500 (1994) ... 13, 15, 16

*Ebay Inc. v. Mercexchange, L.L.C.*,
    547 U.S. 388 (2006) ...................................................................... 24

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008) ............................................ 11

*Harper & Row Publishers, Inc. v. Nation Enters.*,
    471 U.S. 539 (1985) .................................................................. 13, 18

*Kelly v. Arriba Soft Corp.*,
    336 F.2d at 820 ...................................................................... 16, 17, 18

*Knickerbocker Toy Co. v. Azrak-Hamway Intern.*,
    668 F. 2d 699 (2d Cir. 1982) ........................................................ 11

*Newton v. Diamond*,
    349 F.3d 591, 388 F. 3d 1189 (9th Cir. 2004)................................ 12

*Núñez v. Caribbean Int'l News Corp.*,
    235 F.3d 18 (1st Cir. 2000) ............................................................ 15

*On Davis v. The Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001) .................................................... 10, 12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................... 5, 15

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F. 3d 657 (9th Cir. 2017) ........................................................ 24

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ........................................................ 23

*Ringgold v. Black Entertainment Television, Inc.*,
    126 F.3d 70 (2d Cir. 1997)(dictum) .............................. 2, 10, 11, 12

*Roley v. New World Pictures, Ltd.*,
    19 F.3d 479 (9th Cir.1994) ........................................................... 23

*Sandoval v. New Line Cinema Corp.*,
    147 F.3d 215 (2d Cir. 1998) ......................................................... 11

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ...................................................... 14

*Selzer v. Green Day, Inc.*,
    735 F.2d 1170 (9th Cir. 2010) ...................................................... 16

*SOFA Entertainment, Inc. v. Dodger Productions*,
    709 F. 3d 1273 (9th Cir. 2013) ..................................................... 18

*Stewart v. Abend*,
    495 U.S. 207 (1990) ...................................................................... 16

*TRW v. Andrews*,
    534 U.S. 19 .................................................................. 20, 21, 22, 23

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009) ........................................................ 15

**Statutes**

17 U.S.C. 505 ................................................................................. 24

17 U.S.C. § 107(2) ......................................................................... 16

17 U.S.C. § 107(3) ......................................................................... 17

17 USC § 505 ........................................................................... 21, 24

Copyright Act § 107 ........................................................... 2, 13, 14, 15

Fair Credit Reporting Act (FCRA) ................................................. 20

**Other Authorities**

Fed. R. Civ. P. 56(c) ........................................................................ 9

Fed. R. Civ. P. 56(e) ........................................................................ 9

Federal Rule of Civil Procedure 56(a) .......................................... 8, 9