Ryan A. Hamilton, Esq.
CA Bar No. 291349
HAMILTON LAW
5125 S. Durango Dr., Ste. C
Las Vegas, NV 89113
(702) 818-1818
(702) 974-1139 (fax)
ryan@hamlegal.com
*Attorney for the Plaintiff,*
*Richard N. Bell*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| RICHARD N. BELL,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>WILMOTT STORAGE SERVICES, LLC; and DOES 1-100 and ROE Corporations I-X inclusive,<br><br>　　　　　Defendant. | Case No.: 2:18-cv-07328-CBM-MRW<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>DATE:　　May 28, 2019<br>TIME:　　10:00 a.m.<br>JUDGE:　Hon. Consuelo B. Marshall<br>CRTRM:　8B |

## Introduction

Plaintiff, a retired lawyer and professional photographer, created a beautiful photograph showing the Indianapolis skyline with its picturesque canal in the foreground (the "Indianapolis Photo"). Plaintiff registered his copyright in the photo with the United States Copyright Office. Defendant Wilmott Storage Services (WILMOTT) wholesale copied the Photo and posted it on its travel-

1

booking website, without compensating Plaintiff nor getting his permission.

In WILMOTT's cross-motion for summary judgment, WILMOTT concedes the essential facts establishing copyright infringement. WILMOTT argues, however, that it is not liable because of defenses it has raised. But each of WILMOTT's defenses fails as a matter of law, as set forth below. Plaintiff respectfully request that the court grant his summary judgment motion and deny WILMOTT's cross-motion for summary judgment.

**A. Copyright Infringement**

There is no dispute that WILMOTT infringed Plaintiff's copyright. WILMOTT, however, asks the Court to hold that WILMOTT's conduct of copyright infringement falls within an affirmative defense allowing WILMOTT to avoid liability for its infringement. In other words, WILMOTT concedes infringement, but not liability.

To establish a claim for copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Rice v. Fox Broadcasting Co.,* 330 F.3d 1170, 1174 (9th Cir. 2003)(citing *Feist Publ'ns., Inc. v. Rural Tel. Servs., Inc.,* 499 U.S. 340, 361 (1991)). A plaintiff may establish the copying element by showing that the works in question are substantially similar in their protected elements and that the infringing party has access to the copyrighted work. *Id.*

As to the first element, Plaintiff owns the copyright to the work at issue – the Indianapolis Photo. He registered the in the Indianapolis Photo with the United States Copyright Office, Registration Number VA0001785115. (**Ex. A**, Bell Dec. ¶8, **Ex. D.**, copyright registration). (All exhibits referenced are attached to Plaintiff's Motion for Summary Judgment.) *See* dkt. 29, Plaintiff's Motion for Summary Judgment.

As to the second element of copyright infringement, WILMOTT concedes that it copied the Indianapolis Photo. *See*, *e.g.*, Dkt. #42-1, at p. 5:13-27.

WILMOTT admits that it copied the Indianapolis Photo onto the server for its website. WILMOTT concedes that it displayed the Indianapolis Photo at two different URLs associated with the "Visit USA" website: http://www.visitusa.com/images/states/alabama/cities/mobile/park.jpg and http://www.visitusa.com/images/states/alabama/cities/mobile/park_yyy.jpg.

WILMOTT contends that the Indianapolis Photo was never on its webpage. Instead, WILMOTT contends, without explanation, that the Photo was only on its server. But the Indianapolis Photo was unquestionably displayed on the publicly-available "Visit USA" site. In any case, this is a distinction without a difference.

Under the Copyright Act and Ninth Circuit precedent, regardless of whether WILMOTT displayed the Indianapolis Photo on a webpage or on its server makes no difference. In either case, WILMOTT's actions constituted copying for purposes of copyright infringement. In *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518 (9th Cir. 1993), the Ninth Circuit held that "copying" for purposes of copyright infringement occurred when a computer program was transferred to a computer's RAM.

The important point is that WILMOTT copied the Indianapolis Photo, regardless of how WILMOTT characterizes its display of the photo. Contrary to WILMOTT's assertion, no reasonable jury could find that WILMOTT has not infringed Plaintiff's copyright.

**B. WILMOTT's affirmative defense of *de minimis* copying fails as a matter of law under Ninth Circuit precedent.**

WILMOTT ignores controlling Ninth Circuit precedent and does not even apply the relevant legal test in asserting that its copying was *de minimis*. In the Ninth Circuit a defendant's use of a copyrighted work is *de minimis* "only if the average audience would not recognize the appropriation." *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004)(citing *Fisher v. Dees*, 794 F.2d 432, 434 (9th Cir. 1986)).

Here, as WILMOTT concedes, WILMOTT copied the entire Indianapolis Photo. There is no question that the average audience member would recognize WILMOTT's appropriation of the Indianapolis Photo.

The Ninth Circuit's decisions in *Fisher v. Dees*, 794 F.2d 432, 434 (9th Cir. 1986) and *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004) provide guidance on whether WILMOTT's copying was *de minimis*. In *Newton* recording artists the Beastie Boys used without authorization a six-second, three-note segment of a jazz flutist's copyrighted work in a song. *Newton*, 388 F.3d at 1190. The Ninth Circuit affirmed the district court's grant of summary judgment on the ground that the defendant's use was *de minimis*. In reaching its conclusion, the Ninth Circuit reasoned that no reasonable juror could find that the part of the composition the Beastie Boys used was a quantitatively or qualitatively significant portion of the composition as a whole. *Id*. at 1195-6. The Court noted that the copied portion was only about two percent of the four-and-a-half minute song and thus was not quantitatively significant. Qualitatively, the portion of the song the Beastie Boys used was no more significant than any other portion of the song. *Id*. Consequently, the Beastie Boys unauthorized use was *de minimis* and not actionable. *Id*. at 1196-7.

In *Fisher*, the plaintiffs owned the copyright to the 1950s song, "When Sunny Gets Blue." The plaintiffs brought a copyright infringement action against a comedian based on his copying of the main theme of the song for use in a parody, "When Sonny Sniffs Glue." On appeal, the Ninth Circuit rejected "out of hand" the comedian's argument that his appropriation of a portion of the song had been *de minimis* and thus did not infringe the copyright. The *Fisher* Court explained,"[a]s a rule, a taking is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation." *Fisher*, 794 F.2d at 434 fn2. The Court explained that the comedian's appropriation failed this test because anyone familiar with the original song would instantly recognize the comedian's appropriation. *Id*.

4

The Ninth Circuit's decisions in *Newton* and *Fisher* teach that the *de minimis* defense applies only in limited situations where the appropriation of the original work would not be recognized by the average audience. Further, these decisions show that WILMOTT's *de minimis* defense fails as a matter of law. WILMOTT appropriated the entire Indianapolis Photo. WILMOTT's appropriation was thus both quantitatively and qualitatively significant. As in *Fisher*, anyone familiar with the Indianapolis Photo would recognize WILMOTT's appropriation.

WILMOTT cites to *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir.2001) but WILMOTT concedes that the Court in the Second Circuit decision in *Davis* held that *de minimis* copying did not apply to that particular set of facts. Consequently, the *Davis* decision does not support WILMOTT's position. WILMOTT's primary claim that its use of the copyrighted work was *de minimis* is that, according to WILMOTT, the image never appeared on its travel website. Instead, without offering an explanation, WILMOTT asserts that the Indianapolis Photo only appeared on its web server. But again, under controlling Ninth Circuit precedent WILMOTT's use of the entire photo, apparently with the intention of advertising its travel website, does not fit within the *de minimis* doctrine. To make matters worse, WILMOTT refused to take down the Indianapolis Photo from the web address' http://www.visitusa.com/images/states/alabama/cities/mobile/park.jpg and http://www.visitusa.com/images/states/alabama/cities/mobile/park_yyy.jpg despite multiple requests from Plaintiff. WILMOTT's refusal to cease its infringing activity despite multiple requests is likewise inconsistent with the *de minimis* doctrine.

For these reasons, WILMOTT's *de minimis* defense fails as a matter of law.

**C. WILMOTT's statute-of-limitations defense fails as a matter of law in this case of continuing copyright infringement.**

Once again, WILMOTT simply ignores Ninth Circuit precedent in arguing that its infringing conduct should be excused. Here, WILMOTT incorrectly argues that because WILMOTT first copied and displayed the Indianapolis Photo more

than three years ago, Plaintiff's claims are time-barred under 17 U.S.C. § 507(b). WILMOTT is wrong. As the Ninth Circuit held in *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481-2 (9th Cir. 1994), in a case of continuing copyright infringement, a plaintiff may recover for all acts of infringement occurring within three years of filing suit.

The Ninth Circuit expressly adopted this interpretation of the statute of limitations for copyright claims in *Roley*. The Ninth Circuit explained that section 507(b) – the provision of the Copyright Act setting forth the statute of limitations – "…does not provide for a waiver of infringing acts within the limitations period if earlier infringements were not discovered and not sued upon, nor does it provide for any reach back [beyond the three-year limitations period] if an act of infringement occurs within the statutory period." *Id*. (internal quotation omitted).

In this case, there is no question that WILMOTT displayed the Indianapolis Photo without authorization during the three years preceding the filing of the instant lawsuit. Indeed, WILMOTT initially displayed the Indianapolis Photo at http://www.visitusa.com/images/states/alabama/cities/mobile/park.jpg and then later displayed the Photo at http://www.visitusa.com/images/states/alabama/cities/mobile/park_yyy.jpg. WILMOTT continued displaying the Indianapolis Photo after Plaintiff found WILMOTT using the Photo, on or about April 7, 2018, and sent WILMOTT a written request to doing so. WILMOTT even continued displaying the Indianapolis Photo after Plaintiff brought this suit and filed his summary judgment motion.

At most, WILMOTT's statute-of-limitations defense would only preclude Plaintiff from recovering for WILMOTT's violations beyond the three years preceding the filing of this lawsuit. But Plaintiff's claims before the 3-year statutory period are subject to a discovery rule, as the Ninth Circuit held in *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004). The important point, however, is that in cases of continuing copyright infringements – such as this case – plaintiffs

may bring actions for all acts of infringement within the preceding three years. Because WILMOTT's infringement of the Indianapolis Photo continued well after Plaintiff advised WILMOTT of the infringement, and even after Plaintiff was forced to file suit, WILMOTT's statute-of-limitations defense fails as a matter of law.

Here, WILMOTT has presented no evidence that Bell "discovered or could have discovered" the infringement by the Defendant. In fact the Defendant argues that the infringement was not viewable by the general public. Bell has stated under oath in April 2018, he discovered the infringement by the Defendant. (Dkt. 29-1, para. 9).

In 2014, the U.S. Supreme Court stated in *Petrella v. Metro-Goldwyn-Mayer, Inc.* 572 U.S. 663, 671-72, 134 S.Ct. 1962, 1969-70, 188 L.Ed.2d 979 (2014)[1] announced that it was not overturning the discovery rule but discussed its support for the injury rule.

> Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a "discovery rule," which starts the limitations period when "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." (internal quotation marks omitted).

See 572 U.S. 663, FN 4

Then, at pages 671-62, the *Petrella* Court stated:

> It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed; the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period. See *Stone v. Williams*, 970 F.2d 1043, 1049 (C.A.2 1992)("Each act of infringement is a distinct harm giving rise to an independent claim for relief.").

---

[1] The Defendants do not even cite *Petrella* in their Summary Judgment brief.

> Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work. See 3 M. Nimmer & D. Nimmer, Copyright § 12.05[B][1][b], p. 12–150.4 (2013) ("If infringement occurred within three years prior to filing, the action will not be barred even if prior infringements by the same party as to the same work are barred because they occurred more than three years previously."). Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

In this case WILMOTT readily admits that the infringing photo was on WILMOTT's server until March 10, 2019. (*See* Dkt. 42-3, para. 12)[2]. WILMOTT's admission of a "series of discrete infringing acts" is well within three years of the filing of this Complaint on August 21, 2018. *See*, Dkt. 42-3.

In fact, under the Injury Rule, Bell has a claim against WILMOTT for every act of infringement that occurred from August 21, 2015 until March 10, 2019 as WILMOTT admits the Indianapolis photo was on the Defendant's website and server continuously after August 20, 2015 until approximately March 10, 2019. Remember, Bell wrote an email to Jon Tullo on April 7, 2018 when he first discovered the infringement to take down the Indianapolis Photo (See Dkt. 29-7, pp.3-5) which Jeffrey J. Goeson's Declaration confirms that did not occur until March 10, 2019. Whether this Court adopts the Discovery Rule or the Injury Rule, Bell's claims are not time-barred and the Court should grant Plaintiff summary judgment.

/ / /

---

[2] Defendant admits still retaining the Indianapolis Photo; "I made a copy of the park_yyy.jpg file to my local machine for future forensic purposes." (*See* Dkt. 42-3, para. 12, Jeffrey J. Goeson's Declaration.)

8

**D. WILMOTT's fair use defense fails as a matter of law.**

Under 17 U.S.C. § 107 fair use of a copyrighted work does not constitute infringement. In deciding whether an alleged infringer's use is fair use, courts look at the factors enumerated below.

The U.S. Supreme Court stated in *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 105 S.Ct. 22, 1885 L.Ed.2d 588 (1985) stated

> Fair use is a mixed question of law and fact. *Pacific & Southern Co. v. Duncan*, 744 F.2d 1490, 1495, n. 8 (11th Cir. 1984)…The factors enumerated in the section are not meant to be exclusive: "[S]ince the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts." House Report, at 65, U.S.Code Cong. & Admin.News 1976, p. 5678. The four factors identified by Congress as especially relevant in determining whether the use was fair are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the substantiality of the portion used in relation to the copyrighted work as a whole; (4) the effect on the potential market for or value of the copyrighted work.

**(1)** the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

The focus of this factor is whether the alleged infringer's use of the copyrighted work "merely replaces the object of the original creation or instead adds a further purpose or different character….this factor asks whether and to what extent the new work is transformative." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001)(quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, 114 S.Ct. 1164, 127 (1994)). The more transformative the alleged infringer's use of the copyrighted work, the less important the other fair use factors, including commercialism, become. *Kelly*, 336 F.3d at 818.

WILMOTT's use of the Indianapolis Photo was in no way transformative. WILMOTT copied the entire Indianapolis Photo and reproduced the Photo on WILMOTT's website without changing it one iota. As such, WILMOTT's use of the Indianapolis Photo did not "add[] something new" with a further purpose or

different character, altering the first [copyrighted work] with new expression, meaning or message." *Campbell*, 510 U.S. at 579. As the Ninth Circuit observed in *Kelly*, courts are reluctant to find fair use where, as here, an original work is merely transmitted in a different medium. 336 F.3d at 818-19. Here, WILMOTT has not even reproduced the Indianapolis Photo in a different medium; WILMOTT simply copied the entire work and put it on its own web page.

Neither representative of the Defendant, Jon Tullo or Jeffrey J. Goeson have presented any evidence of the purpose and character of use of this photo. The use by the Defendant was not newsworthy.

WILMOTT's use of the Indianapolis Photo was decidedly exploitative. Indeed, WILMOTT apparently appropriated the Indianapolis Photo to avoid the expense of having to license photos for its travel website. *See Napster, Inc.,* 239 F.3d at 1015 (use of unauthorized copies made to save the expense of purchasing authorized copies was exploitative).

Next, there is no question that WILMOTT's use of the Indianapolis Photo on its "Visit USA." travel-booking site was for commercial purposes. (admitted at Dkt. 45-1, para. 26, pp.9-10). Although commercial use alone does not preclude a finding of fair use, it does weigh against it. *Napster, Inc.*, 239 F.3d at 1015. Not only did WILMOTT use the Indianapolis Photo to promote its commercial website, WILMOTT used the Photo without authorization to avoid paying for photos on the site. *Id.* (explaining that repeated use of unauthorized copies may constitute a commercial use).

All in all, WILMOTT's non-transformative, commercial use of the Indianapolis Photo weighs against a finding of fair use.

///
///
///
///

**(2)** the nature of the copyrighted work;

The Indianapolis photo is a depiction of the skyline of Indianapolis from the canal. Bell licenses copies to primarily businesses to use in their advertising. Travel companies, Radio, T-V stations and realtors have been frequent purchasers of license. *See*, **Exhibit C**, sales records.

Works that are creative, as opposed to more fact-based works go to the "core of intended copyright protection." *Id.* at 1016. The Indianapolis Photo plainly is a creative work, not a fact-based work. The copyright act serves to promote creativity to benefit both the artist and the public. *Kelly*, 336 F.3d at 819. Congress created the fair use exception for "purposes of teaching, research, criticism, and new reporting.…" *Id*. Because the Indianapolis Photo is a creative work this factor weighs against a fair use finding.

**(3)** the amount and substantiality of the portion used in relation to the copyrighted work as a whole;

WILMOTT concedes that it used the entire Indianapolis Photo. Dkt. 37, at 18:1-4. As Dkt. 29-5 which a Screen Shot of the Defendant's infringement located at http://www.visitusa.com/images/states/alabama/cities/mobile/park.jpg shows it is a carbon copy of Dkt. 29-2, the photo that was submitted to the U.S. Copyright Office for registration. "While wholesale copying does not preclude fair use per se, copying an entire work militates against a finding of fair use." *Kelly*, 336 F.3d at 820 (internal quotation omitted). Where an alleged infringer copies only as much as is necessary for his intended use, this factor will not weigh against him. *Id*. at 820-821.

Here, however, WILMOTT did not need to copy the entire Indianapolis Photo to advertise its website. The fact that WILMOTT used the entire Photo – more than was necessary for its purpose – weighs heavily against fair use.

/ / /

/ / /

11

**(4)** the effect of the use upon the potential market for or value of the copyrighted work.

Defendant is correct that Supreme Court has stated: "This last factor [potential market for or value of the copyrighted work] is undoubtedly the single most important element of fair use." *Harper* at 566. "The infringer, [Wilmott] is required to prove elements of profits attributable to other than the infringed work." *Id*. at 567. Here, the Defendant presented no evidence of its profits attributable to sources other than the Indianapolis Photo.

As the Supreme Court stated in *Sony Corp. of America v. Universal City Studios, Inc*., 464 U.S. 417, 451, 104 S.Ct., 774, 793 (1984):

> Thus, although every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright, noncommercial uses are a different matter. A challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work. Actual present harm need not be shown; such a requirement would leave the copyright holder with no defense against predictable damage. Nor is it necessary to show with certainty that future harm will result. What is necessary is a showing by a preponderance of the evidence that some meaningful likelihood of future harm exists. If the intended use is for commercial gain, that likelihood may be presumed. But if it is for a noncommercial purpose, the likelihood must be demonstrated.

As the Defendant has claimed, the Plaintiff has filed numerous lawsuits for copyright infringement. The intent of these lawsuits is to stop the wide spread infringement of the Indianapolis Photo. More than 400 infringers have copied the Indianapolis Photo from the Plaintiff's website. Week after week Bell has been forced to hire attorneys to file suits in Indiana, Nevada, Texas, Colorado, Kentucky, Alabama and California to stop proliferation of infringement of his photo.

/ / /

/ / /

Bell sells a commercial perpetual license of this photo for $200. Since 2011 when Bell first noticed infringement he has had made few sales, which he attributes to widespread infringement of the Indianapolis Photo. (*See* Dkt. 29-3).

This factor requires courts to consider the extent of harm caused by the particular actions of the alleged infringer and "whether unrestricted and widespread conduct of the sort engaged in by the defendant…would result in a substantially adverse impact on the potential market for the original." *Kelly*, 336 F.3d at 821 (internal quotation omitted). Transformative works are less likely to have an adverse impact on the market for the original than works that merely supersede the original. *Id*.

Here, WILMOTT engaged in wholesale copying of Plaintiff's creative work, the Indianapolis Photo. As evidenced by the sales records attached to Plaintiff's Motion for Summary Judgment (Dkt. 29-3), Plaintiff has licensed the Indianapolis Photo several times. If WILMOTT's behavior of simply copying the Photo and pasting it on its own website were allowed to continue unchecked, the market for Plaintiff's Photo would disappear. There would be no reason to license the Photo from Plaintiff if a potential purchaser could use an identical copy of the Indianapolis Photo for free.

This is different from the situation the Ninth Circuit faced in *Kelly*. There, an operator of a visual search engine reproduced thumbnails – miniature replicas – of copyrighted photographs to improve access to images on the internet and related websites. The Ninth Circuit in *Kelly* concluded that the search engines use of the thumbnails did not harm the market for the copyright owner's images. *Id*. at 821. The *Kelly* Court reasoned that the thumbnails did not serve as a substitute for the full-sized images because the thumbnails lost their clarity when enlarged. *Id*. Accordingly, if a potential purchaser were interested in the original images, he likely would still buy the original works because of their greater clarity. *Id*.

In contrast to *Kelly*, there would be no reason to purchase the original Indianapolis Photo from Plaintiff. Rather, a defendant could simply take the Photo from WILMOTT's web page since it is identical to the original.

If WILMOTT's conduct were allowed to go on unrestricted, WILMOTT would deal a fatal blow to the market for Plaintiff's Photo. This factor weighs against fair use.

On balance, each of the fair use factors weighs against a finding of fair use. Consequently, WILMOTT's fair use defense fails as a matter of law.

**(5)** WILMOTT's actions in copying and using the Indianapolis Photo and refusing to remove it from their website were in bad faith.

WILMOTT argues that it acted in good faith in using the Indianapolis Photo and that it removed the Photo from its website as soon as possible. Not so. As noted, WILMOTT continued displaying the Indianapolis Photo after Plaintiff requested its removal on or about April 7, 2018, and even continued displaying the Photo up to the point that Plaintiff filed his Summary Judgment Motion. These actions are wholly inconsistent with good faith. They weigh against a finding of fair use.

**E. There is a necessity for an injunction.**

As noted, WILMOTT refused to remove the Indianapolis Photo from its website or server despite numerous requests. Plaintiff was forced to file this lawsuit, yet WILMOTT still failed to remove the Photo. The Photo remained displayed on WILMOTT's website as of the time Plaintiff brought his summary judgment motion. WILMOTT's conduct plainly shows that an injunction is warranted.

**F. The Court should award Plaintiff his attorney's fees under 17 U.S.C. § 505.**

Each of WILMOTT's defenses to copyright infringement is a non-starter. Plaintiff respectfully requests that the Court award his reasonable costs and attorney's fees under 17 U.S.C. § 505.

/ / /

## CONCLUSION

WILMOTT has conceded the essential facts constituting copyright infringement. Each of WILMOTT's affirmative defenses fails as a matter of law. For the foregoing reasons, Plaintiff requests that the Court deny WILMOTT's cross-motion for summary judgment and grant Plaintiff's motion for summary judgment.

Dated this 7th of May 2019.

Respectfully submitted,

Hamilton Law, LLC

By: */s/ Ryan A. Hamilton*_____
    Ryan A. Hamilton, Esq.
    CA Bar No. 291349
    HAMILTON LAW
    5125 S. Durango Dr., Ste. C
    Las Vegas, NV 89113
    (702) 818-1818
    (702) 974-1139
    *Attorney for Plaintiff,*
    *Richard N. Bell*

**PROOF OF SERVICE**

I, Ryan A. Hamilton, Esq., declare:

I am a resident of the state of Nevada and over the age of eighteen years and not a party to the within action. My business address is 5125 S. Durango, Suite C, Las Vegas, NV 89113. On May 7, 2019, I filed the foregoing document via the Court's CM/ECF system which will serve notice to the following:

Paul D. Supnik, Esq.
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
paul@supnik.com
*Attorney for Defendant(s)*

Executed on May 7, 2019, at Las Vegas, Nevada.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Ryan A. Hamilton*