Paul D. Supnik [SBN 52842]
Email: paul@supnik.com
9401 Wilshire Blvd., Suite 1250
Beverly Hills, CA 90212
Telephone: 310-859-0100
Facsimile: 310-388-5645

Attorney for Defendant
WILMOTT STORAGE SERVICES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RICHARD N. BELL,<br><br>        Plaintiff,<br><br>    vs.<br><br>WILMOTT STORAGE SERVICES, LLC; etc. et al.<br><br>        Defendants. | Case No. 2:18-cv-07328-CBM (MRWx)<br><br>Hon. Consuelo B. Marshall<br><br>**DEFENDANT WILMOTT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: May 28, 2019<br>Hearing Time: 10:00 am<br><br>Location: Courtroom 8<br>Complaint filed: August 21, 2018<br>Pretrial Conf: October 22, 2019<br>Trial Date: November 12, 2019 |

1

**TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 2

II.   ARGUMENT -- PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT .......................................................................................................... 4

    A.    WILMOTT'S CLAIMED ACTS ARE DE MINIMUS AS A MATTER OF LAW. ............................................................................................. 4

    B.    EVEN IF NOT MINIMUS, THE CLAIMED INFRINGEMENT IS FAIR USE AS A MATTER OF LAW. ............................................................. 7

    C.    BELL HAS NOT AVOIDED THE DEFENSE OF STATUTE OF LIMITATIONS AS A MATTER OF LAW. ...................................................... 8

III.   CONCLUSION ..................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auscape International v. National Geographic Society*,
  409 F.Supp. 2d 235, 242 (S.D.N.Y. 2004) ....................................... 9

*Fisher v. Dees*
  794 F.2d 432 (9th Cir. 1986) ............................................................ 6

*Knickerbocker Toy Co. v. Azrak-Hamway Intern.*,
  668 F. 2d 699 (2d Cir. 1982) ................................................... 4, 5, 6

*Newton v. Diamond*,
  349 F.3d 591, 388 F. 3d 1189 (9th Cir. 2004) ................................. 6

*Petrella v. Metro-Goldwyn-Mayer, Inc.*
  572 U.S. 663, 134 S.Ct. 1962, 188 L.Ed.2d 979 (2014) .................. 8

*Auscape International v. National Geographic Society*, 409 F.Supp. 2d
  235, 242 (S.D.N.Y. 2004)

*TRW v. Andrews*,
  534 U.S. 19, 27-30; 122 S.Ct. 441, 151 L.Ed. 2d 339 (2001) .......... 9

**Statutes**

17 U.S.C. 107 ....................................................................................... 7

17 USC § 505 ....................................................................................... 9

Copyright Act of 1976 .......................................................................... 7

**Other Authorities**

*U.S. Constitution*, Article 1 Section 8 Clause 8 .................................... 7

## I. INTRODUCTION

Having no basis to support its copyright claim, plaintiff BELL:

(1) ignores disclosing the intermediate steps he must have taken to identify WILMOTT's pinpoint URL which carried the Indianapolis Photo; [see SUPNIK Suppl. Dec. generally and especially at ¶¶ 6-8]

(2) distracts by contending a webpage and WILMOTT's website is a distinction without a difference; [see SUPNIK Suppl. Dec. ¶¶ 4-5]

(3) exaggerates the purported refusal to delete the Indianapolis Photo when plaintiff learned of it, despite TULLO's attempts to promptly remove the images;

(4) refuses to adequately explain why he failed to discover the image on WILMOTT's server despite having filed over 50 copyright cases within 3 years from the image file creation date in 2014;

(5) filed a lawsuit alleging copyright infringement but refuses to acknowledge no publicly accessible webpages on WILMOTT's visitusa.com existed with plaintiff's Indianapolis Photo.

Of the numerous alleged infringements Mr. Bell has pursued [Plaintiff's Opposition at 12:20], and irrespective of their merits, this is not the case he should have filed. This is not a case of BELL needing more discovery to support his contentions. Rather, this is a case of plaintiff turning a blind eye to the fact that there are no readily accessible webpages with the Indianapolis Photo on WILMOTT's website. By filing this lawsuit BELL essentially went on a fishing expedition with no fish to be found.

Sometimes, facts, law and policy conflict. Not here. There is a confluence of facts, law and policy which all coincide and require dismissal, whether on the grounds of *de minimus* infringement, fair use or statute of limitations. Copyright policy should reward creator for breaches of significant rights. It should not

2

permit maintenance of cases which are minimal, frivolous, and waste precious federal judicial resources. This case is *de minimus* for the following reasons:

- It is highly unlikely that a member of the public could see the Indianapolis Photo on visitUSA.com.
- Even if a theoretical commercial benefit were to accrue to a visible Indianapolis Photo on WILMOTT's website, there is no evidence that such image would be exploitative. That, of course, is hypothetical and speculative because no evidence exists that the image ever appeared on a webpage of visitUSA.com but only resided on its server.
- BELL has not articulated how there could be any commercial let alone exploitative use of the photo of the Indianapolis Photo if it is not accessible by the public.
- There is no evidence that defendant refused to take down the server except for concern raised by the plaintiff's counsel, Mr. Ryan, as to what plaintiff had raised as spoliation of evidence. [GOESON decl. at ¶¶10, 12; TULLO decl. at ¶¶4, 5, 10; SUPNIK decl. at ¶4]
- BELL acknowledges that the Indianapolis Photo existed on the website as of December 24, 2014. [BELL's Statement of Genuine Disputes at 8, ¶15] Thus, there is no evidence in this dispute that the image first resided on the server of defendant WILMOTT within three years prior to the filing date of this lawsuit.
- Mr. Bell has not offered any meaningful explanation as to the delay in learning of the existence of the Indianapolis Photo on its server or filing the lawsuit.
- This case does not cry out for the court to create a remedy to bend or toll the statute of limitations.

3

## II. ARGUMENT -- PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT.

### A. WILMOTT'S CLAIMED ACTS ARE DE MINIMUS AS A MATTER OF LAW.

BELL still does not answer how he was able to find the image he claims is infringing using Google Image Search. He does not explain how to use a reverse image search service such as Google Image Search or Tineye. Nor does he explain how he was able to use the Internet Archive to display that pinpoint URL. It is that missing link, that he must already know that the image is on the website and have an actual copy of the Indianapolis Photo or a digital copy of the Indianapolis Photo to be able to find its location on the web server. And if he did not have a copy of that photo to plug into an image search service such as Google Images or Tineye to obtain the pinpoint URL, he could not even find the hierarchical file structure which would otherwise lead somebody to that image. Mr. Bell has not answered that question.

The answer to the question as to why this case was brought was not answered by Plaintiff. Perhaps plaintiff was expecting to eventually be able to see an actual web page on visitusa.com that displayed the Indianapolis Photo rather than the buried file on the server, though the course of discovery. BELL has not found such a web page. WILMOTT has not been able to locate any such web page. Yet BELL has not dismissed but continued this litigation causing WILMOTT to go to great expense to try to dispose of this matter.

*Knickerbocker Toy Co. v. Azrak-Hamway Intern.,* 668 F. 2d 699, 702, 703 (2d Cir. 1982) is the most analogous case regarding *de minimis* copyright. There, presumably a complete copy existed of a blister pack card for model cars with an otherwise infringing image for a purely commercial enterprise, but the card was never really used. It existed. It was in-house. But not publicly used.

And the District Court, affirmed by the Second Circuit, dismissed that copyright claim. The District Court "stated that 'the short answer is that [the blister card] was only an office copy which was never used.'" The Second Circuit stated "Finally, on the record herein, the copyright claim with respect to the blister card falls squarely within the principle of *de minimis non curat lex,* and the dismissal of that claim is affirmed."

That fact situation is essentially the same situation here. Thus the Indianapolis Photo existed on the WILMOTT server. It was not available to the public. The public could only access it if they already had a copy of Mr. Bell's photograph. They would have had to have a copy of Mr. Bell's photograph or actually know the internal file structure of the website in order to be able to have any access. They would need the pinpoint URL of the image. As a practical matter that simply means that it is virtually impossible that anyone would have been able to see or find the image. Presumably, the normal person that would be doing a search would search for Indianapolis. Even if the person doing a search on the website looked for something about Mobile, Alabama, they would still not see it. They would not find it by merely browsing the visitusa.com website. It simply is not apparent. It only resides on the server.

It is as if one needed the numbers of a combination lock to access an office, or in this case the website. The public does not have code to that combination lock and could try thousands of different combinations to unlock and gain access. While not unlawful, the public could try millions or billions of web combinations to gain access to the Indianapolis Photo. But is it or should it really be actionable copyright infringement for the existence of that image file to reside dormant only on a web server?

As in *Knickerbocker*, nobody was likely to walk off the street into the Azrak office to see that otherwise infringing image for commercial use in a

blister pack. It was only found by plaintiff *Knickerbocker* through discovery. Here, nobody is going to likely to simply wander and browse on the visitUSA.com website to be able to see the Indianapolis Photo.

*Knickerbocker* is not in conflict with the Ninth Circuit *de minimus* infringement decisions. The facts are only slightly of a different character. *Fisher v. Dees* case deals with parody where an entire song fully accessible, and widely distributed. The essence is the statement that "meager and fragmentary" uses are *de minimus* when average audiences would not recognize the appropriation. Bell applies that concept to the fact that an entire photograph becomes visible. Applying *Fisher v. Dees,* 794 F.2d 432, 434 (9th Cir. 1986), a dormant image on a web server and not practically accessible to the public is tantamount to being so meager and fragmented so that an average audience could not recognize that there exists any appropriation.

*Newton v. Diamond,* 349 F.3d 591, 388 F. 3d 1189 (9th Cir. 2004) compels the same result. A six second sound recording was accessible to the public. There, the meager and fragmentary test of *Fisher v. Dees* was satisfied. It was not qualitatively nor quantitatively significant. However, a six second segment widely accessible to the public is far more than "meager and fragmentary" and far more qualitatively or quantitatively significant as compared to a dormant image on WILMOTT's server. *Newton v. Diamond* did not deal with a sound recording in the vault of a music studio. *Newton v. Diamond* was not about a sound recording hidden in a chest accessible only if one has a key to it. A coin buried at the beach is not accessible unless one has the map. And only Mr. Bell held that map.

But the character of use can be *de minimus* even if the whole work is copied but not accessible. And that is exactly the situation which occurred in *Knickerbocker*, 688 F.2d at 699. The whole image was there in the blister pack,

6

but it was simply not used. That use, in a sense was not qualitatively or quantitatively significant. Nobody is going to be able to see it unless they have the key to be able to have access to the office or manufacturing facility of *Knickerbocker* which held that image.

## B. EVEN IF NOT MINIMUS, THE CLAIMED INFRINGEMENT IS FAIR USE AS A MATTER OF LAW.

Fair use is a creature of judge made law which has been codified in 17 U.S.C. 107 in the Copyright Act of 1976. The entire structure of copyright law is based on the oft repeated constitutional authorization to "To promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." *U.S. Constitution,* Article 1 Section 8 Clause 8. Fair use is all about policy. The policy is how to reward authors to continue as an incentive to create, without giving them windfalls and otherwise protecting the public from harassment by owners of such rights granted. The question is where to draw that line, and here as a matter of policy it is in the interest of furthering that policy drawing that line by granting summary judgment. Copyright claims have been dismissed under copyright for far more egregious examples of infringement. *Brammer v. Violent Hues Productions, LLC*, Civil Action No. 1-17-cv-01009, (ED Va 2018).

Significant reasons for finding fair use are:

- No exploitative use of the Indianapolis Image. See *Brammer v. Violent Hues Productions, LLC* (E.D. Va. 2018), Civil Action No. 1-17-cv-01009,

- Although the amount used was the entire photograph, its inaccessibly rendered as a practical matter, the amount used tantamount to nothing.

7

- Similarly, the effect on the potential market was nil, since payment for a license presumes that it would be used and accessible.
- The nature of the work is in significant part factual, defining a region and depicting the architecture and landscape of the area that Mr. Bell had no part in creating.
- WILMOTT's actions show good faith.

Plaintiff talks about two URLs with the image, but it is explained in the declaration of Jon Tullo [TULLO decl. at ¶ 4] he had originally requested his person in India to take down the file after he was informed by Mr. Bell that it even existed. This suggests that instead of deleting the file, the name was changed so that it would not be accessible by the prior URL.

### C. BELL HAS NOT AVOIDED THE DEFENSE OF STATUTE OF LIMITATIONS AS A MATTER OF LAW.

Even if fair use or *de minimus* use were not an issue, the statute of limitations is. There is no continuing copyright infringement. There are no discrete acts of infringement other than, if any, the presumed placement of the file on the visitusa.com server on or about December 24, 2014. All in evidence is the fact that there was a file existing as of that date. No evidence exists that any other infringing act occurred later. One act does not exist forever. There is no redistribution of the Indianapolis Photo.

BELL cites *Petrella v. Metro-Goldwyn-Mayer, Inc.* 572 U.S. 663, 671-72, 134 S.Ct. 1962, 1969-70, 188 L.Ed.2d 979 (2014), a case all about the laches defense and whether that defense can reduce the 3 year copyright statute of limitations. The Supreme Court said it could not. When a specific statute exists, the laches defense cannot cut short that limitations period. *Petrella* discusses discreet claims, each act starting a new violation period. *Petrella* at 134 S. Ct. 1969. That bears no relationship to the facts existing here. As defendants

acknowledge, the image file of the Indianapolis Photo appears on vistausa.com's server or about December 24, 2014. But even if that image laid dormant until now, there were no discrete subsequent acts which would restart the running of the statute of limitations. *Petrella* did not address or consider the well articulated analysis in *Auscape International v. National Geographic Society*, 409 F.Supp. 2d 235, 242 (S.D.N.Y. 2004) or the prior decision in *TRW v. Andrews*, 534 U.S. 19, 27-30; 122 S.Ct. 441, 151 L.Ed. 2d 339 (2001). *Petrella* did not need to do so because that was not the issue it decided.

Even under the discovery rule, BELL fails to answer why it was not until April 2018 that Mr. Bell did not discover what BELL identifies as WILMOTT's infringement. The only explanation given is the sheer immensity of the Internet, but Mr. Bell fails to explain what he did to try to find other infringers. He acknowledges that he was able to find 400 infringers. He did not explain why he could find images that enabled him to file over 50 lawsuits prior to December 2017 but could not find the pinpoint URL that would lead him to the Indianapolis Photo on WILMOTT's web server until 2018.

### III.  CONCLUSION

WILMOTT has shown that any infringement is *de minimus,* as a matter of law, that even if actionable, infringement is defeated as a matter of law by fair use and is time barred by the statute of limitations as a matter of law. No injunction should issue, and therefore WILMOTT's Cross-Motion for Summary Judgment should be granted, plaintiff's complaint dismissed and WILMOTT awarded its attorney's fees under 17 U.S.C. § 505.

/s/

Dated: May 14, 2019    _____
                                        PAUL D. SUPNIK
                                        Attorney for Defendant
                                        WILMOTT STORAGE SERVICES, LLC

# CERTIFICATE OF SERVICE

I, PAUL D. SUPNIK certify that I am an attorney at law, licensed to practice in the State of California and am admitted to practice in the United States District Court for the Central District of California and that on May 14, 2019, I electronically filed/lodged the within:

**DEFENDANT WILMOTT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

with the Clerk of the Court by using the CM/ECF system. I certify that all counsel of record in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

May 14, 2019

/s/
_____
PAUL D. SUPNIK